* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * ORDER
Plaintiff moved for admission into evidence, Plaintiff's social security disability application, disability file, and supporting documents, including, but not limited to a notice of decision relating to her social security disability application. Defendants have objected to admission into evidence of the above stated evidence. Plaintiff's motion is denied.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of injury that is the subject of this claim is September 21, 1998.
2. On such date, Defendant-Employer employed three or more employees.
3. On such date, Defendant-Employer was subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On such date, Liberty Mutual Insurance Company was the carrier.
5. On September 21, 1998, Plaintiff attempted to hold a desk from falling off a conveyor and suffered a compensable injury to her lower back.
6. Defendant-Employer sent Plaintiff to Mission St. Joseph's Urgent Care on September 23, 1998, and she came under the care of Dr. David Bates.
7. Plaintiff started receiving physical therapy at Mission St. Joseph's Hospital for her back strain/sprain on or about October 5, 1998. She was also referred for and started receiving physical therapy for pain in her right hip secondary to her back strain/sprain on December 17, 1998.
8. Plaintiff continued to work while she received physical therapy for a back sprain/strain.
9. Defendant-Employer filed a Form 60, employer's admission of employee's right to compensation and accepted liability for Plaintiff's lumbar strain; reported her average weekly wage was $490.55 yielding a compensation rate of $327.00; and has paid all medical bills for Plaintiff from the date of her injury through February 15, 1999.
10. The sole issue for determination is what, if any, disability benefits Plaintiff is owed.
11. The parties stipulated into evidence as Stipulated Exhibit # 1, a Pre-Trial Agreement, as modified and initialed by the parties.
12. The parties stipulated into evidence as Stipulated Exhibit # 2, medical records of Plaintiff, stipulated by the parties by letter filed on September 20, 2004.
13. The parties stipulated into evidence as Stipulated Exhibit # 3, further medical records of Plaintiff, stipulated by the parties by letter dated September 20, 2004.
14. The parties stipulated into evidence as Stipulated Exhibit # 4, Plaintiff's disability benefits records.
15. The parties stipulated into evidence as Stipulated Exhibit # 5, additional stipulations by the parties filed on March 7, 2005.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. On September 21, 1998, Plaintiff was employed with Defendant-Employer as a product inspector. On this date, Plaintiff suffered an admittedly compensable injury by accident to her lower back when she saw a desk leaning on a conveyer belt and attempted to push the desk onto the center of the belt. Plaintiff jerked her body as she pushed against the desk. She experienced pain in her back that worsened, but she continued to work for the rest of the day.
2. Defendants admitted to the compensability of Plaintiff's September 21, 1998 lower back injury by accident pursuant to a Form 60, employer's admission of employee's right to compensation, dated August 9, 2004. Prior to August 9, 2004, Defendants had not admitted or denied liability for Plaintiff's September 21, 1998 work injury.
3. Plaintiff reported to work on September 22, 1998, and reported the September 21, 1998 accident to her supervisor, Jeff Laughter. She was sent to Defendant-Employer's medical department where she was given Ibuprofen and ice to put on her lower back. She worked the remainder of the day.
4. On September 23, 1998, Plaintiff called Defendant-Employer and left a message that she was unable to come to work. When Defendant-Employer's medical department returned her call, she informed the medical department that she was having back pain. The medical department instructed Plaintiff to go to Mission St. Joseph's Urgent Care for evaluation. Plaintiff went to Mission St. Joseph's Urgent Care the same day.
5. The attending physician at Mission St. Joseph's Urgent Care diagnosed Plaintiff with a lumbar sprain and secondary right hip pain and gave her restrictions of no stooping, twisting at the trunk, squatting, heavy pushing, heavy pulling or lifting over five pounds. Plaintiff reported to work later that day and was placed in a job suitable to her restrictions.
6. On October 1, 1998, Plaintiff returned to Defendant-Employer's medical department for a follow-up visit regarding her restrictions. At this visit, Dr. David Bates, Defendant-Employer's in-house physician, referred Plaintiff to physical therapy.
7. Beginning on or about October 5, 1998, Plaintiff began physical therapy with Mike Heilig of Mission St. Joseph's Outpatient Rehabilitation. She continued to work while attending physical therapy.
8. Plaintiff made steady progress with physical therapy and her restrictions gradually lessened until December 3, 1998, when Dr. Bates lifted her restrictions completely. Upon reexamination on December 3, 1998, Dr. Bates noted that Plaintiff continued to have residual right hip pain secondary to her lower back strain.
9. On February 15, 1999, Mr. Heilig noted that Plaintiff had met her physical therapy goals and discharged her with no restrictions. He did note that Plaintiff complained of intermittent right hip pain, but did not note any other complaints. Plaintiff continued to work her regular job duties through the time of her discharge by Mr. Heilig.
10. Plaintiff began treatment with Dr. Donald Mullis, an orthopedic surgeon at Asheville Orthopaedic Associates, P.A., on March 3, 1999. Dr. Mullis took x-rays, which did not reveal any acute problems. Dr. Mullis diagnosed Plaintiff with a lumbar strain and a right hip greater trochanteric bursitis problem. He injected Plaintiff's hip with a Celestone and Marcaine mix to ease her pain and discomfort. He did not give Plaintiff any work restrictions or prescribe physical therapy. Dr. Mullis scheduled Plaintiff for a follow-up visit in three weeks and stated that he would probably discharge her from his care at that time.
11. Plaintiff saw Dr. Mullis again on March 24, 1999. She reported that she was feeling much better and had no right hip pain. Dr. Mullis decided to conservatively treat the minor discomfort that Plaintiff reported. He discharged Plaintiff from his care and did not give her any restrictions.
12. Plaintiff worked full duty from March 24, 1999 until December 1999, without any complaints to Dr. Mullis regarding her lower back or right hip. During this period of time, however, Plaintiff complained to Defendant-Employer's medical department about one incident of back pain and two incidents of right hip pain.
13. On December 21, 1999, Plaintiff returned to Dr. Mullis with complaints of low back pain and bilateral buttock pain. Dr. Mullis obtained an x-ray of Plaintiff's pelvis and did not find any acute problems, but did take Plaintiff out of work. Dr. Mullis released Plaintiff to return to work on January 3, 2000, with restrictions. Defendant-Employer could not accommodate these restrictions and Plaintiff did not return to work at that time. Dr. Mullis opined that Plaintiff was fully recovered by January 13, 2000, and released her to return to work at full duty with no restrictions.
14. Plaintiff returned to full-duty work without incident until May 25, 2000, when Plaintiff reported to Defendant-Employer's medical department complaints of pain radiating down her right leg. Plaintiff last worked for Defendant-Employer on May 26, 2000. She saw Dr. Mullis on May 30, 2000, at which time he placed her out of work, and scheduled her for an MRI on May 31, 2000. At her follow-up appointment on June 5, 2000. Dr. Mullis released Plaintiff to return to light-duty work, lifting no more than five pounds, and no stooping, squatting or bending. Dr. Mullis also recommended that Plaintiff engage in physical therapy to eliminate pain and muscle spasms. Dr. Mullis also informed Plaintiff she had degenerative disk disease in the L5-S1 region of her back, which may be the cause of her lower back and right hip pain.
15. Defendant-Employer did not have any light-duty work available when Plaintiff was released to light-duty work. Plaintiff subsequently completed an employer-funded, short-term disability application in June 2000, and Dr. Mullis indicated on the application that Plaintiff's disability was not work related.
16. Following a June 26, 2000 visit, Dr. Mullis noted that Plaintiff should be able to return to work, full duty in approximately ten days, provided she practiced good body mechanics. Plaintiff informed Dr. Mullis that she did not want to go back to work until she felt ready to work. Dr. Mullis opined that she should be able to return to work in ten days, but on July 6, 2000, he kept her out of work for an additional ten days.
17. On July 17, 2000, Dr. Mullis released Plaintiff to light-duty work, but Defendant-Employer did not have light-duty work available. On August 1, 2000, Dr. Mullis noted that Plaintiff had muscle spasms and opined her degenerative disk disease was causing her problems. Dr. Mullis released Plaintiff to full-duty work, without restrictions, that same day.
18. Plaintiff last treated with Dr. Mullis on August 31, 2000. Plaintiff reported that she was having problems with her lower back and right buttock. Dr. Mullis noted that this pain was related to her degenerative disk disease and advised her the best thing she could do would be to get back to work.
19. Plaintiff requested and was authorized to see Dr. James Hoski, a board certified orthopaedic surgeon in Asheville, North Carolina, on September 29, 2000. Plaintiff reported the history of injury due to grabbing a desk as it was leaning on the conveyor belt on September 21, 1998, and having an onset of lower back pain. Dr. Hoski noted that Plaintiff was complaining of right-sided lower back and buttock pain that radiated into her right leg. After examination, Dr. Hoski diagnosed her with a lumbar strain with chronic low back pain and recommended physical therapy.
20. Dr. Hoski also noted that Plaintiff was capable of working with occasional bending, lifting of twenty pounds occasionally, ten pounds frequently, and five pounds constantly. Dr. Hoski also opined that if Defendant-Employer did not have suitable employment available during the period of September 2000 through the completion of her physical therapy in November 2000, it would have been appropriate for her to be placed out of work during this time period. Dr. Hoski further opined that his examination findings were consistent with her September 21, 1998 injury.
21. Dr. Hoski released Plaintiff from his care on November 15, 2000, with a two percent permanent partial disability rating to her back. He noted that Plaintiff could lift over fifty pounds occasionally, twenty-five pounds frequently, and ten pounds constantly, but could only bend or twist occasionally. At deposition, Dr. Hoski opined to a reasonable degree of medical certainty that Plaintiff's symptoms in September 2000 were caused by her September 21, 1998 injury. Great weight is given to the medical opinions of Dr. Hoski.
22. At the time Dr. Hoski released Plaintiff to return to work in November 2000, Plaintiff was receiving short-term disability. Thereafter, Plaintiff filed for and was granted social security disability. From May 26, 2000 until May 2001, Plaintiff received $19,099.98 in short-term disability benefits and $8,849.33 in long-term disability benefits.
23. Plaintiff last worked for Defendant-Employer on May 26, 2000. Plaintiff has not returned to work for Defendant-Employer following May 26, 2000, nor has Plaintiff returned to work for any other employer following May 26, 2000. Plaintiff has not presented any evidence that she has actively engaged in any job search after the November 15, 2000 release to return to work or attempted to find other employment, but has been unsuccessful due to physical limitations resulting from her September 21, 1998 work injury.
24. In May 2001, Defendant-Employer offered Plaintiff a position. Plaintiff accepted the position and reported to Defendant-Employer's medical department for a physical examination. Plaintiff passed the examination; however, prior to returning to work, Plaintiff called Defendant-Employer and stated that she was going to have surgery for a condition that was unrelated to her workplace injury.
25. Plaintiff sustained an admittedly compensable injury by accident to her lower back on September 21, 1998.
26. As a direct and proximate result of her September 21, 1998 compensable back injury Plaintiff was incapable of working from December 21, 1999 until January 13, 2000, and from May 26, 2000 until November 15, 2000.
27. Plaintiff's disability as a result of her work-related injury by accident resolved by November 15, 2000. As a result of her compensable injury, Plaintiff sustained a two percent permanent partial impairment to her back.
28. Defendant-Employer filed a Form 60 and accepted liability for Plaintiff's lumbar strain, reported her average weekly wage was $490.55 yielding a compensation rate of $327.00.
29. The medical treatment Plaintiff received as a result of her injury was reasonably required to effect a cure, provide relief and lessen her disability. In addition to medical compensation already paid, Defendants are obligated to pay all medical expenses incurred, including treatment by Dr. Hoski and Dr. Mullis and any related treatment through November 15, 2000.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to her lower back on September 21, 1998. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of her September 21, 1998 compensable back injury, Plaintiff was disabled from work from December 21, 1999 until January 13, 2000, and from May 26, 2000 until November 15, 2000. N.C. Gen. Stat. § 97-2(9).
3. As a direct and proximate consequence of Plaintiff's September 21, 1998 compensable back injury she is entitled to temporary total disability compensation benefits at a rate of $327.00 per week from December 21, 1999 until January 13, 2000, and from May 26, 2000 until November 15, 2000. N.C. Gen. Stat. §97-29.
4. Plaintiff has been evaluated and rated with a two percent permanent partial impairment to her back as a result of her September 21, 1998 work injury and is entitled to compensation at the rate of $327.00 per week for six weeks. N.C. Gen. Stat. §97-31(23).
5. Plaintiff is entitled to have Defendants pay all medical expenses related to her compensable condition beginning September 21, 1998, and continuing for so long as such treatment is necessary to effect a cure, provide relief and/or lessen her period of disability. N.C. Gen. Stat. § 97-25.
6. Defendants failed to timely file a Form 60, employer's admission of employee's right to compensation pursuant to N.C. Gen. Stat. § 97-18(b) and N.C.I.C. Rules 601 and 802(2), and are subject to sanction.
7. Defendants are entitled to a credit offset for short-term disability paid to Plaintiff through an employer-funded disability plan for the period from May 26, 2000 until November 15, 2000.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee hereinafter approved, Defendants shall pay temporary total disability compensation to Plaintiff at a rate of $327.00 per week from December 21, 1999 until January 13, 2000, and from May 26, 2000 until November 15, 2000. This amount shall be paid in a lump sum.
2. Subject to an attorney's fee hereinafter approved, Defendants shall pay to Plaintiff permanent partial disability compensation at the rate of $327.00 per week for six weeks for the two percent rating to her back. This amount shall be paid in a lump sum.
3. Twenty-five percent of the compensation awarded Plaintiff in paragraphs 1 and 2 of this AWARD is approved as a fee for Plaintiff's attorney and shall be deducted and paid directly to Plaintiff's attorney for accrued compensation.
4. Defendants are allowed a credit for the period from May 26, 2000 through November 15, 2000, for short-term disability compensation Plaintiff received through the employer-funded disability plan.
5. Defendants shall pay all medical expenses incurred by Plaintiff as a result of her compensable injury from September 21, 1998 through November 15, 2000. Plaintiff is not precluded from any rights she may have to seek future medical treatment under N.C. Gen. Stat. § 97-25.1.
6. Defendants shall pay the costs.
7. IT IS FURTHER ORDERED that Defendants are sanctioned $300.00 for their failure to timely file a Form 60 employer's admission of employee's right to compensation.
This the __ day of February 2006.
 S/________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_________________ LAURA K. MAVRETIC COMMISSIONER
 S/______________________ DIANNE C. SELLERS COMMISSIONER